IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-CR-339-D
5:15-CV-358-D

| | |
|---|---|
| ERIC BRANCH, ) | |
| ) | |
| Petitioner, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This case comes before the court on the pro se petition ("petition") (D.E. 121) by petitioner Eric Branch ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"). The government filed a motion to dismiss (D.E. 126) the petition, which the court denied. In its order denying the motion, the court referred the sole claim in the petition to the undersigned magistrate judge for the conduct of an evidentiary hearing and issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 19 Nov. 2015 Ord. (D.E. 130) 2. An evidentiary hearing was held on 26 January 2016. *See* D.E. 137. For the reasons stated below, it will be recommended that the petition be dismissed.

## BACKGROUND

### I. PETITIONER'S CONVICTION AND SENTENCING

On 3 October 2012, petitioner was indicted (D.E. 1) for knowingly and intentionally distributing a quantity of cocaine base in violation of 21 U.S.C. § 841(a). On 1 July 2013, a 2-count superseding indictment (D.E. 44) was filed that charged petitioner with a second count of knowingly and intentionally distributing 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a).

Petitioner was initially represented by attorney Suzanne Little of the Federal Public Defender's Office. *See* Notice of Little's Appearance (D.E. 24). On 31 January 2013, Little was permitted to withdraw (D.E. 27) and on 5 February 2013, attorney Jerry Wayne Leonard entered a notice of appearance (D.E. 29). On 26 March 2013, Leonard was permitted to withdraw (D.E. 38), and on 2 April 2013, attorney Susan Morrice Thompson ("Thompson") entered her notice of appearance (D.E. 41).

On 16 October 2013, a jury found petitioner guilty on both counts of the indictment. Jury Verdict (D.E. 86). On 21 May 2014, the court sentenced petitioner to concurrent terms of 180 months' imprisonment. J. (D.E. 118) 2. After imposing the sentence, the court explained to petitioner his appeal rights, including the requirement that any notice of appeal be filed within 14 days of the entry of judgment, and specifically informed petitioner that, if requested, "the Clerk of Court will prepare and file a notice of appeal on your behalf." Sent. Tr. (D.E. 135) 25:7-15. Petitioner did not appeal his conviction.

## II. THE § 2255 PETITION

On 27 July 2015, petitioner filed the instant § 2255 petition. In it, he raised only one claim, asserting that counsel was ineffective in her failure to file a notice of appeal after being instructed to do so. Pet. 4 (Ground 1).

## III. PROCEEDINGS ON THE § 2255 PETITION

Upon review of the petition and the government's motion to dismiss, the court concluded that an evidentiary hearing was required on the claim raised in the petition. *See* 19 Nov. 2015 Ord. 1-2. The court appointed counsel for petitioner for the purpose of the hearing. *See* D.E. 131 at 1; *see also* Notice of Atty. Appearance by Geoffrey Ryan Willis (D.E. 134).

At the hearing, petitioner and petitioner's mother, Rosa Branch ("Mrs. Branch"), testified on his behalf, and the government presented the testimony of Thompson and Mitchell Styres ("Styres"), another attorney in Thompson's firm. *See generally* § 2255 Evidentiary Hrg. Tr. ("Tr.") (D.E. 139). The court admitted six exhibits offered by petitioner without objection from the government. Tr. 41:3-9. Though given the option to file post-hearing supplemental memoranda, the parties opted not to file any additional submissions. *See* Notices of No Additional Briefing (D.E. 140, 141).

## APPLICABLE LEGAL PRINCIPLES

### I. STANDARD OF REVIEW FOR § 2255 MOTIONS

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a preponderance of the evidence." *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C.) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")), *rep. & recomm. adopted*, 2013 WL 5570956, at *5 (9 Oct. 2013). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 Fed. Appx. 972, 973 (4th Cir. 2007) (citing *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970)).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Concerning the second prong, a petitioner must demonstrate that he was prejudiced by the ineffective assistance. *Id.* Specifically,

> [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The court may address the prejudice prong before the performance prong or even address only one prong if the petitioner has made an insufficient showing on the other prong. *Id.* at 697.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. Defense counsel has a duty to file an appeal if unequivocally instructed to do so by the defendant. *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007). "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id.* Where an attorney does not file an appeal as unequivocally instructed by

4

his client, prejudice is presumed, even if the appeal would not have been successful, because it effects forfeiture of the appellate proceeding. *Poindexter*, 492 F.3d at 268.

### III. DETERMINATION OF CREDIBILITY

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

## ANALYSIS

### I. HEARING TESTIMONY

The court's analysis of plaintiff's sole claim in the petition—that he received ineffective assistance of counsel because Thompson failed to file an appeal as purportedly unequivocally instructed by him—begins with a review of the testimony at the hearing on the petition.

Petitioner testified as follows: Petitioner pled not guilty to the charges asserted against him and a jury trial was held where he was found guilty. Tr. 8:4-8; 9:19-25. After the verdict was reached, petitioner told Thompson that he needed to appeal and Thompson agreed. Tr. 10:4-7. He believed that he had a valid ground for appeal based on the government's purported

5

violation of the anti-shuttling provision of the Interstate Agreement on Detainers, and he provided paperwork supporting this argument to Thompson following the jury verdict. Tr. 7:15-25; 10:11-14. Thompson filed a motion to dismiss on this ground after the trial, but the motion was denied by the court. Tr. 10:13-14; 11:10-13. In Thompson's letter to petitioner advising him that the court denied the motion to dismiss, she told him that the issue could be addressed during the appeal process following sentencing. Tr. 11:10-13; 12:19-21; 4 Mar. 2014 Ltr. (D.E. 121-2) 2.

Petitioner was sentenced to a term of 180 months, though he was facing a guideline range of 360 months to life. Tr. 13:16; 31:5-7. Petitioner conferred with Thompson and her colleague Styres at counsel table immediately following imposition of the sentence. Tr. 32:17-21. Petitioner told Thompson that he still wanted to appeal and that his whole purpose of going to trial was to preserve his appeal rights. Tr. 13:16-22; 18:16-19; 22:9-12; 33:21-23; 34:8-11. Petitioner later wrote to his mother asking her to contact Thompson about the status of his appeal. Tr. 19:9-13; 34:12-18. He did so because he was unable to contact Thompson directly. Tr. 19:1-13; 34:12-18. Petitioner received a letter from Thompson dated 8 June 2015 stating that she never received confirmation from him that he wished to appeal and that it was her understanding at sentencing that he was satisfied with the sentence and no appeal was filed. Tr. 21:7-16; 8 June 2015 Ltr. (D.E. 121-2) 3.

Mrs. Branch testified to the following: She was at petitioner's sentencing hearing and spoke to Thompson afterwards. Tr. 42:11-14. Thompson told her that petitioner wished to appeal. Tr. 42:15-16; 43:10-12. After receiving petitioner's request that she contact Thompson, Mrs. Branch telephoned Thompson several times before reaching her and inquiring about the status of the appeal. Tr. 44:3-10.

Turning to Thompson's testimony, she testified as follows: Styres discussed case strategy with her and ultimately helped her try the case. Tr. 53:6-11. Thompson agreed with petitioner that following the jury trial and before sentencing, the issue of the detainer was one that she believed was preserved for appeal and they both expected to pursue an appeal after sentencing. Tr. 55:20 to 56:3; 66:24-25; 68:21 to 69:2; 74:13-19; 77:18-20. She reviewed the presentence report with petitioner, and he indicated that he did not agree with the advisory guideline range. Tr. 57:12-19.

At petitioner's sentencing on 21 May 2014, Thompson and Styres were present with petitioner. Tr. 57:20 to 58:2. Thompson thought the sentencing went very well because the sentence imposed was much less than anticipated. Tr. 58:3-5. She met with petitioner in the Marshal's office following sentencing and discussed the sentence and options with petitioner. Tr. 58:8-15. Petitioner was pleased with the sentence and no longer wanted to appeal. Tr.60:3-13; 77:21-24. "He was very clear to us that he did not want to appeal the sentence at that time. It wasn't—there was no—he wasn't equivocal about it, and it wasn't a long meeting." Tr. 60:11-13; *see also* Tr. 70:3-12. Styres went over the appeal deadlines with petitioner and petitioner was advised that it was petitioner's choice, but that Thompson and Styres did not recommend that he appeal in light of the good sentence imposed. Tr. 60:19-23. He was told that if he changed his mind and wished to appeal, he needed to contact them within the time frames explained. Tr. 60:19-23. Thompson denied telling Mrs. Branch that she was pursuing an appeal on petitioner's behalf. Tr. 61:18-21; 69:17-23.

Styres testified consistently with Thompson: Petitioner was disappointed at the conclusion of the trial that the jury returned a guilty verdict. Tr. 81:2-11; 91:13-15. Styres was present at the sentencing hearing and met with petitioner both before and afterwards. Tr. 83:13-

7

15. After hearing that petitioner was receiving a sentence of 180 months, Styres discussed with petitioner his and Thompson's surprise at the sentence imposed. Tr. 85:17-23; 93:5-10. Prior to sentencing, the intention was always to file an appeal. Tr. 86:8-12. But afterwards, Styres "left with no other opinion or no other understanding in that [petitioner] was so satisfied with the sentence, that he was going to forgo or wanted to forgo any other appeal." Tr. 86:13-21; *see also* Tr. 87:21 to 88:1; 93:22 to 94:3. He stated that he did nevertheless inform petitioner of his right to appeal, about which the court had advised petitioner a short time before. Tr. 86:22 to 87:9.

## II. COUNSEL'S ALLEGED VIOLATION OF DUTY TO FILE AN APPEAL

The court finds that petitioner has failed to establish by a preponderance of the evidence that he unequivocally instructed Thompson to file an appeal. Fundamental to the court's conclusion is that it finds Thompson and Styres' testimony on the material factual issues to be credible and petitioner's and Mrs. Branch's contrary testimony not credible.

Among other reasons, Thompson and Styres' testimony was matter-of-fact, not adversarial, in tone. Each corroborated the other's testimony. They evinced no hostility, but rather genuine concern about achieving the best possible outcome in petitioner's criminal case.

Their credibility is further supported by their substantial experience as criminal defense attorneys. Thompson worked in a district attorney's office for 31 years and estimated that during that time she handled thousands of criminal trials, including district court trials. Tr. 50:10-21; 63:14-19. She then worked in the law office of Benzet, Thompson, Thompson, and Styres, and continued to handle some additional contract work for the district attorney's office. Tr. 50:13-16; 62:20 to 63:5. Styres worked in a district attorney's office for four and a half years before entering private practice, where he has worked for twelve years. Tr. 78:20 to 79:4. He estimated

that a third of his practice is devoted to state criminal work and a fifth to federal criminal work. Tr. 79:19-23.

Moreover, Styres testified to his experience in handling appeals specifically. Tr. 79:23 to 80:8. He is a member of the Fourth Circuit Criminal Justice Act panel and handles appeals in cases where trial counsel withdraws or where his firm handled the case at the trial court level. Tr. 80:2-8. Thus, filing an appeal on petitioner's behalf would not have been an unfamiliar, potentially off-putting task for Styres, but a matter of routine.

Further, Thompson and Styres' conduct in representing petitioner, as described in their testimony, is consistent with that of experienced criminal defense lawyers. Their testimony demonstrates a conscientious and proper effort to make sure that petitioner understood the advantages and disadvantages of appealing and not appealing. Their concurrence in petitioner's decision not to appeal after sentencing was also manifestly reasonable. Indeed, any reasonable defense attorney would have viewed the sentence received—significantly lower as it was than petitioner's calculated guideline range—as a favorable outcome that did not warrant further challenge on appeal. Notwithstanding that fact, petitioner was still reminded of his right to appeal and that the choice to do so ultimately belonged to him.

The fact that Thompson, Styres, and petitioner agree that prior to sentencing the plan was to pursue an appeal does not, of course, substantiate any failure by counsel to appeal. Planning an appeal in the immediate aftermath of the trial showed appropriate representation at that stage of the proceeding. Later, of course, the sentence received altered the appeal landscape. Again, the testimony by both attorneys that in light of the favorable nature of the sentence petitioner expressly abandoned his previous desire to appeal and that they concurred in that decision was logical and credible.

9

The credible nature of Thompson and Styres' testimony discredits the contrary testimony by petitioner. In addition, petitioner's testimony that he did not attempt to contact his attorneys about his appeal after the sentencing hearing discredits his testimony that he ever directed them to file one. A person in custody who believed an appeal had been filed could reasonably be expected to contact his lawyer about the status of the appeal. Petitioner was sentenced on 21 May 2014 and it was only in a letter to counsel over a year later, 5 June 2015, that he first inquired about his purported appeal. 8 Jun. 2015 Ltr. (D.E. 121-2) 3. Petitioner's claim that he was unable to contact Thompson earlier, thereby requiring him to ask his mother to do so, is not only incredible on its face, but petitioner himself acknowledged at the hearing that he had the ability to send a letter to his attorneys. Tr. 34:12-25.

The credibility of Thompson's and Styres' testimony also discredits the contrary testimony of Mrs. Branch. Her incentive to help petitioner as his mother undermines her credibility as well.

Because petitioner has failed to show by a preponderance of the evidence that he unequivocally directed Thompson or Styres to file an appeal, his petition fails. It should accordingly be dismissed.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that petitioner's § 2255 petition (D.E. 121) be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 28 December 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of

the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 14th day of December 2016.

　　　　　　　　　　　　　　　　　　　　　／s／ James E. Gates
　　　　　　　　　　　　　　　　　　　　　James E. Gates
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge